```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| DIRECTV, INC., a California corporation, | |
| Plaintiff, | HONORABLE JEROME B. SIMANDLE |
| v. | Civil No. 03-2477 (JBS) |
| JIM CLARK, J. D'ANDREA, and ANTHONY DUDLEY, | **OPINION** |
| Defendants. | |

APPEARANCES:

Marc E. Wolin, Esq.
SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, LLC
One Gateway Center, 13th Floor
Newark, NJ 07102-5311
    Attorney for Plaintiff

Jonathan J. Sobel, Esq.
GALERMAN & TABAKIN, LLP
1103 Laurel Oak Road, Suite 111
Voorhees, NJ 08403
    Attorney for Defendant J. D'Andrea

**SIMANDLE**, District Judge:

This matter comes before the Court upon the motion in limine of Defendant Joseph D'Andrea to strike the declaration of Scott Madvig and preclude the introduction into evidence of a packing slip that DirecTV, Inc. seeks to use in its case against Defendant. For the reasons discussed herein, Defendant's motion will be denied.

**BACKGROUND**

DirecTV, Inc. ("DirecTV") is a California-based company in the business of distributing satellite television broadcasts throughout the United States.  (Compl. at ¶ 1.)  Programming is electronically scrambled by DirecTV and is transmitted from satellites to DirecTV subscribers who receive the signals through the use of DirecTV hardware, including a small satellite dish, an integrated receiver, a DirecTV access card, and cabling.  (Id. at ¶ 2.)  The DirecTV access card unscrambles the signals for those programs paid for by the subscriber.  (Id.)

A number of companies have engaged in the internet sale of illegal equipment designed to modify or circumvent DirecTV's signal-scrambling technology, including devices known as "unloopers."  On May 23, 2003, DirecTV filed a Complaint against Defendant, alleging the purchase of such a device from a company called Canadian Security and Technology and bringing claims under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 ("Communications Act"), and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 ("Electronic Communications Privacy Act").

DirecTV has produced a packing slip, dated April 16, 2001, purporting to reference a purchase for one (1) MK2 Unlooper with SU2 Code.  (See Def.'s Ex. A.)  The device was allegedly shipped to Joseph D'Andrea at 520 Township Line Road, Franklinville, New

Jersey 08322 via Federal Express.  The name of the individual stated to have made the order was Defendant Joseph D'Andrea.  The packing slip was provided to Defendant during discovery.

On or about November 4, 2004, DirecTV provided Defendant with the Declaration of Scott Madvig, dated October 14, 2004.  (See Def.'s Ex. B.)  Madvig, who was the "owner of a shipping facility named Fulfillment Plus," claims to be among those who had possession, custody, control or access to the facility's business records and states that he has personal knowledge of the packing slip at issue.  (Id. at ¶¶ 2, 8-9.)  The Declaration further states that the packing slip provided is a true and accurate copy of the original, that the records were kept in the ordinary course of the regularly conducted business activity of Fulfillment Plus and that such slips were created in the normal practice during the regular course of business of Fulfillment Plus.  (Id. at ¶¶ 5-6.)  DirecTV presents the Madvig Declaration to establish a foundation for the use of this packing slip at trial or arbitration.

## DISCUSSION

Defendant argues that the packing slip is not adequately authenticated by the Declaration of Scott Madvig.  Defendant lists six reasons that the Madvig Declaration fails to satisfy Rules 803(6) and 902(11) of the Federal Rules of Evidence:

> (a) the affidavit/declaration does not say how Madvig obtained the records; (b) Madvig

3

>was not the owner of Canadian Security and Technology, only Fulfillment Plus; (c) it does not state that Madvig would receive orders to fill from Canadian Security and Technology and in-turn, fill those order; (d) it does not state that Madvig did or did not retain the orders after they were filled; (e) there is a chain of custody problem because the records changed hands, there are no affidavits from any other individuals reflective of same or how they came into possession of said orders; [f] Madvig can have no personal knowledge of what happened to the records once they were turned over to the authorities or counsel.

(Def.'s Brief at 8-9.)

Fed. R. Evid. 902(11) provides in relevant part:

>Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>. . .
>
>(11) Certified domestic records of regularly conducted activity.  The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record -
>
>>(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
>>
>>(B) was kept in the course of the regularly conducted activity; and
>>
>>(C) was made by the regularly conducted activity as a regular practice.

> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Fed. R. Evid. 902(11).

This Court now finds that the Madvig Declaration is sufficient to meet the standards set forth by Fed. R. Evid. 902(11) and may therefore authenticate the packing slip at trial or arbitration. The hard copy exhibit attached to the Madvig Declaration is a duplicate of the electronic records of Fulfillment Plus. As required by Rule 902(11), Madvig was among the people at Fulfillment Plus who had possession, custody and control of these records. (Madvig Decl. at ¶ 7.) Moreover, as required by the Rule, the Madvig Declaration sets forth that "this packing slip was kept during the regularly conducted business activity of Fulfillment Plus." (Id. at ¶ 5.) Also, this Declaration states that the packing slip was created in the "normal practice during the regular course of business of Fulfillment Plus." (Id. at ¶ 6.) Therefore, the Madvig Declaration clearly meets the requirements of Rule 902(11).

Defendant is mistaken in arguing that the Declaration does not say how Madvig obtained the records. Madvig's Declaration sets forth that these records "remained in the control and custody of Fulfillment Plus until seized during May 25, 2001

execution of a Writ of Seizure on Fulfillment Plus." (Id. at ¶ 9.) While it is true that Madvig was not the owner of Canadian Security and Technology, Madvig certified that the Fulfillment Plus packing slip was based on data received from the website of Canadian Security and Technology. (Id. at ¶¶ 2-4.) Madvig thus attests to what he and Fulfillment Plus did with regard to the data they received and what they shipped based on that data. (Id.)

Defendant is also incorrect in arguing that the Madvig Declaration "does not state that Madvig would receive orders to fill from Canadian Security and Technology and in-turn fill those order[s]." The Madvig Declaration states that Madvig provided services to companies "including . . . Canadian Security and Technology" and that his company would "package and ship these devices throughout the United States." (Id. at ¶ 2.)

While Defendant claims that the Madvig Declaration does not indicate whether the record relating to Defendant was stored electronically or in hard copy form, the Declaration sets forth in detail exactly how these records were created and stored; it was based on electronic notifications received through the internet, imported into Fulfillment Plus's Access database and then printed out in the form of a packing slip. (Id. at ¶¶ 3-4.) Moreover, the Declaration sets forth how the packing slip was created and how the record came into DirecTV's possession

6

following service of the Writ of Seizure on Fulfillment Plus on May 25, 2001.  (Id. at ¶¶ 3-4, 9.)

Finally, Defendant's claim that the Madvig Declaration "does not state that Madvig did or did not retain the orders after they were filled" is unpersuasive because Madvig stated that he was among the people at Fulfillment Plus who had possession, custody and control of these records.  (Id. at ¶ 7.)  Therefore, the Madvig Declaration has met the standard set forth by Rule 902(11).

Defendant's final claim is outside the scope of Rule 902(11), as it is a claim based on chain of custody.  Defendant claims that the Madvig affidavit is "silent with respect to how Plaintiff's attorneys received the documents."  (Def.'s Brief at 8.)  Thus, Defendant argues that "there is a chain of custody problem because the records changed hands, there are no affidavits from any other individuals reflective of same or how they came into possession of said orders" and "Madvig can have no personal knowledge of what happened to the records once they were turned over to the authorities or counsel."  (Id. at 8-9.)

To address this, DirecTV has submitted the supplemental Declaration of Scott Madvig, dated January 20, 2005, as well as the Declaration of Michael Houck, dated January 21, 2005.  Scott Madvig's January 20, 2005 Declaration states in relevant part:

> 4. On May 25, 2001, DIRECTV executed a Writ of Seizure at Fulfillment Plus.  In

>    response to that event, I immediately closed Fulfillment Plus and terminated all further involvement with the satellite theft devices. I also entered into a comprehensive settlement with DIRECTV.
>
>    5.  On or about June 15, 2001, I produced all of my electronic business records to DIRECTV's counsel, Scott Wilsdon, Esq. of Yarmuth Wilsdon Calfo PLLC (the "Yarmuth Firm") in Seattle, Washington. I did this by turning over to the Yarmuth Firm a zip disk containing the entire Fulfillment Plus Access Database which I described in my prior Declaration in this matter dated October 14, 2004.

(Jan. 20, 2005 Madvig Decl. at ¶¶ 4-5.) This Declaration thus establishes that the information was stored in electronic format and then transferred via zip disk to DirecTV's counsel on June 15, 2001, thereby attesting to the whereabouts of the database and packing slips contained therein from May 25, 2001 until June 15, 2001.

The whereabouts of the packing slips following the June 15, 2001 transfer are explained by the Declaration of Michael Houck, provided to this Court by DirecTV. Mr. Houck, a paralegal at the Yarmuth Firm, attests that the records were received at the firm on or about June 15, 2001. (Declaration of Michael Houck at ¶¶ 2, 4.) Mr. Houck adds that the "original zip disk has been in the custody and control of this firm since that date and no modifications have been made to the data on this disk." (Id. at ¶ 5.) The packing slip at issue here was "printed from the disk." (Id. at ¶ 7.) As a paralegal at the Yarmuth Firm who was

working with Mr. Scott Wilsdon, Esq., a partner at that firm, Mr. Houck has personal knowledge of the location and condition of the database and packing slips from June 15, 2001 until the present.

DirecTV has thus set forth an adequate foundation for the admissibility of the packing slip at issue here and Defendant's motion must be denied.

## CONCLUSION

Therefore, for the reasons discussed above, Defendant Joseph D'Andrea's motion in limine to strike the declaration of Scott Madvig and preclude the introduction into evidence of a packing slip that DirecTV, Inc. seeks to use in its case against Defendant will be denied.  The accompanying Order is entered.


**May 25, 2005**              **s/ Jerome B. Simandle**
DATE                          JEROME B. SIMANDLE
                              United States District Judge

9