IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DIRECTV, INC., a California
corporation,

       Plaintiff,

   v.

JIM CLARK, JOSEPH D'ANDREA,
and ANTHONY DUDLEY,

       Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 03-2477 (JBS)

**OPINION**

APPEARANCES:

Marc E. Wolin, Esq.
SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, LLC
One Gateway Center, 13th Floor
Newark, NJ 07102-5311
    Attorney for Plaintiff

Jonathan J. Sobel, Esq.
GALERMAN & TABAKIN, LLP
1103 Laurel Oak Road, Suite 111
Voorhees, NJ 08403
    Attorney for Defendant Joseph D'Andrea

**SIMANDLE**, District Judge:

This matter comes before the Court upon plaintiff, DirecTV,

Inc.'s application for attorneys' fees and costs against

defendant Joseph D'Andrea.  DirecTV's application for attorneys'

fees and costs follows a four-day bench trial in which the Court

found in favor of DirecTV and against D'Andrea in the amount of

$10,000 as a result of D'Andrea's willful and continuous

violation of 18 U.S.C. § 2511(1)(a) and 47 U.S.C. § 605(a).

DirecTV's application seeks $87,628.90 in attorneys' fees and

costs.  D'Andrea opposes on the ground that the attorney's fees sought are eight and one-half times greater than the judgment recovered.  For the reasons discussed herein, the Court will award DirecTV $87,628.90 in attorneys' fees and costs.

## I.   <u>BACKGROUND</u>

DirecTV, Inc. ("DirecTV") is a California-based company in the business of distributing satellite television broadcasts. (Compl. at ¶ 1.)  Programming is electronically scrambled by DirecTV and transmitted from satellites to DirecTV subscribers. (<u>Id</u>. at ¶ 2.)  The subscribers receive the signals through the use of DirecTV hardware, including a small satellite dish, an integrated receiver, a DirecTV access card, and cabling.  (<u>Id</u>.) The DirecTV access card unscrambles the signals for those programs paid for by the subscriber.  (<u>Id</u>.)  A number of companies have engaged in the internet sale of illegal equipment designed to modify or circumvent DirecTV's signal-scrambling technology, including devices known as "unloopers."  On May 23, 2003, DirecTV filed a Complaint against D'Andrea, alleging the purchase of such a device from a company called Canadian Security and Technology and bringing claims under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 ("Communications Act"), and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 ("Electronic Communications Privacy Act"). [Docket Item No. 1]

2

Between September of 2003 and the bench trial in this matter in March of 2006, the parties conducted discovery and D'Andrea filed numerous motions including (1) a motion for a more definite statement [Docket Item No. 17], (2) a motion to drop or sever all claims [Docket Item No. 15], (3) a motion to dismiss [Docket Item No. 23], and (4) a motion in limine to preclude certain records [Docket Item No. 65.]   D'Andrea also filed a nine-count counterclaim.  [Docket Item No. 48].  In each instance, counsel for DirecTV prepared and filed oppositions papers and made numerous court appearances.  With respect to the nine counterclaims, DirecTV prepared a motion to dismiss as well as a motion for sanctions under Fed. R. Civ. P. 11 which was sent to counsel for D'Andrea.  All of D'Andrea's motions were denied and the Court granted DirecTV's motion to dismiss all of D'Andrea's counterclaims. [Docket Item Nos. 31, 34, 42, 76.]

Approximately one month before trial, DirecTV filed a motion in limine seeking to preclude the testimony of D'Andrea's wife, Patricia D'Andrea, because Mrs. D'Andrea failed to complete her deposition and give responsive answers to questions posed by DirecTV's counsel. [Docket Item No. 80]  The Court heard oral argument on the motion on March 6, 2006 at which point the Court denied the motion to preclude her testimony but ordered Mrs. D'Andrea to appear for her deposition and answer all non-privileged questions. [Docket Item No. 85.]

3

Beginning on March 13, 2006 and concluding on March 17, 2006, this Court held a four-day non-jury trial.  DirecTV called numerous witnesses including experts in DirecTV's operations and in electronic signal piracy technology.  At the conclusion of the trial, the Court found in favor of DirecTV and against D'Andrea on every claim.  The Court awarded DirecTV the amount of $10,000 as a result of D'Andrea's willful and continuous violation of 18 U.S.C. § 2511(1)(a) and 47 U.S.C. § 605(a).  The Court also awarded DirecTV attorneys' fees and costs pursuant to 18 U.S.C. § 2520(b)(3) and 47 U.S.C. § 605(e)(3)(B)(iii).  Noting D'Andrea's "unrepentant" nature and his "fabricated . . . defense," the Court expressed the appropriateness of the assessment of damages because D'Andrea's conduct "was intentional, it was continuing, it was precisely the sort of conduct that the act is designed to prevent."  (Trial Tr. at 63-64.)

Following the trial, DirecTV filed an application for attorneys' fees and costs seeking $86,120.00 in attorneys' fees and $1,508.90 costs. [Docket Item No. 96.]   Counsel for D'Andrea filed opposition to which DirecTV replied. [Docket Item Nos. 97, 98.]  The Court has considered all of the submissions without oral argument.

## II.  <u>DISCUSSION</u>

The award of attorneys' fees and costs in this case is authorized under both the Communications Act and the Electronic

4

Communications Privacy Act.  Specifically, under the
Communications Act, "[t]he court -- . . . shall direct the
recovery of full costs, including awarding reasonable attorneys'
fees to an aggrieved party who prevails."  47 U.S.C.
605(e)(3)(B)(iii); see also Primetime 24 Joint Venture v.
Telecable Nacional, No. 90-1941, 1990 U.S. Dist. LEXIS 20034, *11
(D.N.J. Oct. 10, 1990)(holding that § 605(e)(3)(B)(iii) "makes
mandatory the recovery of the prevailing aggrieved party's full
costs, including reasonable attorney's fees.")  Under the
Electronic Communications Privacy Act the appropriate relief
includes "a reasonable attorney's fee and other litigation costs
reasonably incurred." 18 U.S.C. § 2520(b)(3).  Under Local Civil
Rule 54.2(a), a prevailing party that has been awarded counsel
fees shall file with the Court "an affidavit within 30 days of
the entry of judgment or order" and must set forth the nature,
dates, and a description of the services rendered, the time spent
in rendering the services and the normal billing rate of each of
the persons who performed the work.  L. Civ. R. 54.2(a)(1)-(5).

The starting point for this Court's determination of
reasonable attorney's fee is calculation of the "lodestar" amount
which is "the number of hours reasonably expended multiplied by a
reasonable hourly rate." Penn. Env't Defense Found. v. Canon-
McMill, 152 F.3d 228, 231 (3d Cir. 1998)(citing Hensley v.
Eckerhart, 461 U.S. 424, 433 (1983)); see also Blakey v.

5

Continental Airlines, Inc., 2 F. Supp. 2d 598 (D.N.J. 1998).  In applying the lodestar formula, it is imperative for a district court to "carefully and critically evaluate the hours and the hourly rate set forth by counsel." Blakey, 2 F. Supp.2d at 602. Once the lodestar is calculated, the district court is permitted to adjust fees depending on the success of the party seeking fees. Penn. Env't Defense Found., 152 F.3d at 232 (citing Hensley, 461 U.S. at 433.)  Specifically, the district court may adjust the amount, which is "primarily based on the degree of success that the plaintiff obtained." Material Techs. Inc. v. Carpenter Tech. Corp., No. 01-2965, 2004 U.S. Dist. LEXIS 28893, *11-12 (D.N.J. Sept. 16, 2004).  An excellent result would yield full compensation for attorneys fees.

>    **A.   Calculation of the Lodestar**

As mentioned above, the lodestar is calculated by (1) determining the reasonable hourly rate of counsel and (2) multiplying that rate by the hours counsel has expended on the matter.

>    **1.   Hourly Rate**

The reasonable hourly rate is determined by reference to the marketplace (i.e., the "prevailing rate"). See Missouri v. Jenkins, 491 U.S. 274, 285 (1989) ("we have consistently looked to the marketplace as our guide to what is 'reasonable'").  The attorney's customary billing rate is the proper starting point

6

for calculating fees. <u>Cunningham v. City of McKeesport</u>, 753 F.2d 262, 268 (3d Cir. 1985), <u>vacated on other grounds</u>, 478 U.S. 1015 (1986); <u>Penn. Env't Defense Found.</u>, 152 F.3d at 231 ("The 'starting point' in determining the appropriate hourly rate is the attorneys' usual billing rate.")  Indeed, "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990) The party seeking the particular hourly rate bears the burden of producing evidence of its reasonableness and an affidavit attesting to the reasonableness of the hourly rate charged is sufficient evidence to meet the <u>prima facie</u> burden of proving the requested hourly rate is reasonable.  <u>Material Techs. Inc.</u>, 2004 U.S. Dist. LEXIS 28893 at *20.

D'Andrea's opposition to the rates charged to DirecTV is brief.  D'Andrea asserts that DirecTV "has not attached any evidence to suggest that the fees charged are the prevailing rates . . . [and] there are no affidavits from other attorneys or testimony to same." (D'Andrea Opp. 6.)  D'Andrea's argument is not only unavailing, it is factually inaccurate.  Counsel for DirecTV has in fact attached a certification attesting to the fact that the hourly rates charged were reasonable and represent

the prevailing rates for such work.  (Certification of Marc E. Wolin ¶ 10 (the "Wolin Certification").)  The certification describes the fee arrangement between DirecTV and counsel (Saiber, Schlesinger, Satz and Goldstein, LLC and prior to them, Carpenter, Bennett and Morrissey) in which counsel charges DirecTV at a rate of $210 per hour for work performed by partners, $200 per hour for work performed by counsel and $170 per hour for work performed by associates.  (Id. ¶ 9.)  The certification also states that the rates are the usual billing rates for DirecTV matters and are reasonable in the prevailing market.  (Id. ¶ 9.)  The Wolin Certification also lists another DirecTV matter before this Court in which the Court has accepted these hourly rates as reasonable.  See DirecTV v. Needleman, No. 03-2476, slip op. at 2 (D.N.J. Aug. 3, 2005).

Upon review of the Wolin Certification, the Court finds that counsels' rates are reasonable and justified.  This case involved a somewhat complex subject matter - the theft of satellite signals through the use of high-tech gadgetry and the defendant's attempts to hide his tracks through the use of a web of internet addresses, email accounts and Paypal accounts - and even the maximum hourly rate charged of $210 per hour by Mr. Wolin and his fellow partner David Cohen, Esq. are certainly reasonable for attorneys of their caliber, subject matter expertise and experience.  In addition, these rates have been

8

accepted as reasonable in DirecTV cases by this Court in the past.  See Needleman, No. 03-2476, slip op. at 2.  Finally, the Court notes that although this case spanned nearly three years, counsel's rates did not increase during that time.  The rates, established in 2003, are reasonable especially considering that the bulk of DirecTV's  work was performed in 2006 when DirecTV was preparing for, and participating in, a four-day non-jury trial.

### 2.  **Reasonable Hours**

After the hourly rate is determined, the Court must determine whether the number of hour expended was reasonable. Hensley, 461 U.S. at 433.  For this, the Court must examine the record to determine that the hours billed are not "unreasonable for the work performed."  Washington v. Phila. County Court of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996).  "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary."  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)(citing Hensley, 461 U.S. at 433). Compensable activities include the preparation of filing the lawsuit, background research, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing a favorable judgment, and travel among other things.  See City of Riverside v. Rivera, 477 U.S. 561, 573

9

n.6 (1986); see also Maldonado v. Houston, 256 F.3d 181 184-85 (3d. Cir. 2001); Posa v. City of East Orange, No. 03-233, 2005 U.S. Dist. LEXIS 20060, * 12-13 (D.N.J. Sept. 8, 2005).  In addition, time spent drafting and litigating a fee application is compensable.  See Planned Parenthood v. Attorney General of the State of N.J., 297 F.3d 253, 268 (3d Cir. 2002).

In its evaluation, the district court has "a positive and affirmative function in the fee fixing process, not merely a passive role." Maldonado, 256 F.3d at 184.  The district court must "go line, by line" through the billing records supporting the fee request.  Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 361 (3d Cir. 2001).  As part of the determination of reasonable hours expended, attorneys seeking fees must document the hours for which payment is sought "with sufficient specificity . . . . [W]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Washington, 89 F.3d at 1037 (internal citations omitted); R.C. v. Bordentown Reg'l Sch. Dist. Bd. of Educ., No. 05-3309, 2006 U.S. Dist. LEXIS 72720, *6-9 (D.N.J. Sept. 29, 2006).

DirecTV submits a fee application totaling 424.9 hours expended by eight attorneys - two partners (Mr. Wolin and Mr. Cohen), two counsel (Robert Nussbaum, Esq. and William Carpenter, Esq.) and four associates (Melissa Silver, Esq., Hope Lloyd, Esq., Monica Kraft, Esq. and Eunice Moon, Esq.)  The work

performed by these attorneys consisted of drafting pleadings,
motion practice, attending conferences before Magistrate Judge
Joel Rosen, participating in discovery, participating in
settlement discussions (up until the eve of trial), the
preparation for, and participation in, a four-day non-jury trial
and finally, the drafting and litigating of DirecTV's fee
petition.  (Wolin Cert. ¶¶ 1-245.)

According to the Court's calculations and analysis, DirecTV
expending the following time doing legal work related to this
litigation. First, counsel expended approximately 2.5 hours
drafting pleadings.  Because there were nine additional
defendants in this case, for which an award of counsel fees is
unavailable in this application, DirecTV now only submits one-
tenth of the time associated with preparing and filing the
Complaint.  (Id. ¶¶ 13-14.)  DirecTV also expended approximately
52 hours on D'Andrea related discovery (including drafting and
answering interrogatories, drafting requests for admissions, and
deposing witnesses, including Mr. and Mrs. D'Andrea) and
approximately 25 hours on motion practice (including opposing
D'Andrea's motions for a more definite statement, to drop or
sever all claims, a motion to dismiss, a motion in limine to
preclude certain records and a motion to dismiss certain
counterclaims.)  The vast majority of counsel's time, however,
was spent on trial preparation (drafting the final pre-trial

order, attending the final pre-trial conference, attempting to negotiate a settlement, researching evidentiary issues, preparing a protective order, preparing witnesses, reviewing trial transcripts and strategizing about an preparing and opening and closing statements) which accounted for slightly less than 268 hours and participating in trial, which accounted for approximately 50 hours.  Finally, DirecTV expended approximately 33 hours on drafting and litigating its fee application.

In his opposition brief, D'Andrea argues that Plaintiff has billed an inordinate number of hours in connection with this action and that the number of hours should be drastically reduced to be more in line with the amount of the judgment and "the hours needed to obtain same."  (Def.'s Br. at 8-9.)  D'Andrea lists fourteen specific time entries that are problematic.

The Court finds that the number of hours expended by DirecTV in litigating this complex case over nearly three years were reasonable.[1]  After an extensive review of the hours counsel for

---

[1]  The Court notes that DirecTV expended nearly five times the amount of time preparing for trial than actually expended participating in a trial (approximately 268 hours compared to approximately 50 hours).  Normally, such a discrepancy between the time spent preparing and the time spent participating in trial would be deemed unreasonable.  See Apple Corps. v. Int'l Collectors Soc'y, 25 F. Supp. 2d 480, 491 (D.N.J. 1998)(a senior party spending three times the amount of time preparing for a hearing compared with attending is unreasonable).  However, in this case, the Court does not find even a five-to-one preparation to participation ratio unreasonable.  First, the activities the Court deems as "trial preparation" include more than preparing witnesses, statements and examinations, but settlement

DirecTV expended -- including 219 individual time entries (Wolin Cert. ¶¶ 13-232) -- the Court did not find that counsel's work was either excessive, redundant, or otherwise unnecessary. Indeed, certain facts weigh in favor of the reasonableness of the hours DirecTV expended.  For example, many of these hours were spent as a direct result of opposing numerous motions filed by counsel for D'Andrea such as four pre-trial motions, all of which were denied.  DirecTV also successfully moved to dismiss nine counterclaims brought by D'Andrea.  Second, DirecTV's counsel appears to have managed this litigation well, sufficiently "pushing down" work to associates where appropriate in order to reduce the overall fees incurred.  This means that certain tasks such as attending conferences and trial preparation and participation -- the "high level" work that the Court would expect an experienced attorney to attend to -- were performed by either a partner or counsel.  In contrast, other tasks related to litigating the case, such as drafting motions and briefs, performing discovery, drafting letters and drafting the fee

---

discussions, research on evidentiary issues, preparation of a protective order and preparation of a motion in limine. Moreover, the Court notes that not all of the time spent conducting "trial preparation" was performed either by Mr. Wolin or Mr. Cohen.  Indeed, associates, such as Monica Kraft expended time on issues that were ultimately categorized as "trial preparation."

application were performed by associates.  Consequently, counsel delegated work where appropriate.

The Court finds D'Andrea's objections to the number of hours expended unpersuasive and will address each of D'Andrea's issues. First, the Court notes that four of the fourteen time entries D'Andrea objects to pertain to time spent drafting documents or researching legal issues that D'Andrea characterizes as "form," meaning that the same or similar documents were drafted in all cases that DirecTV brought.  Specifically, D'Andrea takes issue Plaintiff's time entries of 0.5 hours for drafting of the Complaint, 1.6 hours for preparing Rule 26 disclosure and written discovery, 5.8 hours for preparing a motion to dismiss D'Andrea's form counterclaims and time spent responding to motions in limine.  The Court will not reduce DirecTV's hours for these items, however, finding this time expended to be reasonable. Moreover, if D'Andrea's counsel were correct in his position that 30 minutes to prepare a Complaint containing individual, specific allegations, one wonders how few minutes (seconds?) it took D'Andrea's counsel to think about, compose and subscribe the nine non-meritorious and largely non-applicable boilerplate nine-count counterclaim.  While true that there are some similarities between motions from one case to the next, DirecTV cannot simply file one brief in all of its cases.  Rather, each brief, pleading or item of discovery must be tailored to the precise facts of the

14

present case, and DirecTV has done so.  Indeed, with respect to
legal memoranda and briefs, the papers must be updated to reflect
changes in law, which DirecTV also did.  Thus, the Court finds
that the hours expended on these tasks were reasonable.

Second, the Court does not take issue with (and therefore
will not reduce) the hours counsel claims were expended on
discovery matters including "compl[ying]" an expert report,
preparing for depositions, or preparing a final pre-trial order.
The Court notes that DirecTV had to prepare for depositions of
certain uncooperative witnesses (such as Patricia D'Andrea) which
no doubt was time-intensive.  Moreover, the 25.3 hours counsel
for DirecTV spent drafting and finalizing a Final Pre-Trial Order
(which resulted in a 34-page document which was unique to the
factual circumstances of this case) is also not excessive.

Third, the vast majority of time DirecTV expended related to
preparation for and participation in a four-day non-jury trial.
D'Andrea takes issue with two time periods leading up to trial.
First, D'Andrea argues that 66.5 hours spent by Wolin and Cohen
between March 1, 2006 and March 5, 2006 was excessive.  The Court
disagrees.  DirecTV was preparing for what amounted to a four-day
trial which was document intensive and at which they presented
numerous witnesses.  Each attorney billed approximately 33.25
hours over this five-day period, amounting to slightly more than
six hours per day per attorney.  This is not unreasonable.

15

Second, D'Andrea takes issue with the amount of time billed between March 6, 2006 and March 17, 2006, the time spanning from the eve of trial through its conclusion.  Again, neither Mr. Wolin nor Mr. Cohen's time expended during this period appears excessive.  Mr. Wolin billed an average of six and one-half hours per day, working eleven of the twelve days during the time frame identified by D'Andrea.  Mr. Cohen billed an average of six hours per day working seven days of the twelve days.  During this stretch of time, Wolin never billed over eleven and one-half hours in a single day and Cohen never billed over ten hours in a day.[2]  The Court expects that, with any trial, counsel's efforts will intensify on the eve of trial and during the trial as they prepare opening and closing statements and direct and cross-examinations, review trial transcripts, and address evidentiary issues.  Consequently, these amounts are not unreasonable and there is no evidence that counsel billed for redundant or unnecessary work.

Finally, D'Andrea takes issue with the 33.1 hours spent by Plaintiff on DirecTV's fee application stating that the 33.1 hours "seems rather inequitable to say the least."  (Def.'s Opp.

---

[2]  Between March 6, 2006 and March 17, 2006, Wolin billed time on eleven of the twelve days consisting of hours including days where he billed 11.5, 6.3, 5.0, 3.0, 5.8, 6.1, 8.0, 10.0, 3.7, 6.0 and 6.3 hours.  Cohen billed time on seven of the twelve days between March 6 and March 17 including 9.3, 6.8, 2.1, 5.9, 6.8, 10, 1.2 hours.

Br. at 8.)   The Court disagrees.   The fee application is complete with a brief in support of the application as well as an detailed and thorough 33-page account summarizing the attorney billing records which identifies the attorney, the date, the task and the hour billed with great clarity.   (See Wolin Cert.)   Indeed, DirecTV's fee application should serve as a model for litigants filing fee applications under L. Civ. R. 54.2.   Moreover, almost half of the time spent on the fee application (15 hours) was billed by an associate, Monica Kraft, who appeared to do the majority of the drafting.

### B.   **Adjustment of Fees Based on Overall Success**

Once the lodestar is calculated, the district court is permitted to adjust fees depending on the success of the party seeking fees.   Penn. Env't Defense Found., 152 F.3d at 232 (citing Hensley, 461 U.S. at 433.)   Specifically, the district court may adjust the amount, which is "primarily based on the degree of success that the plaintiff obtained."   Material Techs. Inc. v. Carpenter Tech. Corp., 2004 U.S. Dist. LEXIS 28893, *11-12 (D.N.J. 2004).   An excellent result would yield full compensation for attorneys fees.   Id. at *10.

DirecTV argues that they are entitled to full attorney's fees as they have prevailed on every claim brought against D'Andrea.   (Pl.'s Br. at 5.)   Indeed, DirecTV points out that the Court expressed the appropriateness of the assessment of damages

because D'Andrea's conduct was "intentional . . . continuing . . . [and] precisely the sort of conduct that the act is designed to prevent." (Trial Tr. at 63-64.)  The Court concluded that because DirecTV had produced a "mountain of evidence against [D'Andrea]," the statutory maximum of $10,000 "probably is [insufficient] to address the wrongfulness of [D'Andrea's] conduct." (Id. at 65.)  In its opposition papers, D'Andrea argues that DirecTV did not receive an excellent result at the trial and therefore is not entitled to over eight times the amount of the award it recovered.  According to D'Andrea, an excellent result would have been "establishing defendant's willfulness or the existence of 'other' devices alleged to have been ordered by defendant." (Pl.'s Opp. at 10.)

D'Andrea's arguments are unavailing and again, are belied by the trial record.  DirecTV did indeed establish that D'Andrea's violation of the law were willful.  This Court could not have found more clearly that D'Andrea exhibited "willfulness in pirating DirecTV's signal over several years' time" and that D'Andrea's conduct was "intentional . . . continuing . . . [and] precisely the conduct that the act is designed to prevent." (Trial Tr. at 59-60.)  Moreover, DirecTV achieved the maximum amount of damages it could have ($10,000) having chosen to seek statutory damages.  Thus, DirecTV won a complete victory and the Court will not reduce DirecTV's fees based on failure to succeed.

Notwithstanding the reasonableness of DirecTV's hourly rates, time expended and complete success achieved, the Court has also examined whether the resulting recovery of over $87,000 in costs and fees to achieve a $10,000 judgment is excessive or inequitable.  The Supreme Court has generally recognized that the cap upon fee-shifting is set by the reasonableness of the hours and rates rather than by the amount of recovery.  See Blum v. Stenson, 465 U.S. 886, 900 (1984)("Because acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award.").  In that case, even a nominal recovery can justify a significantly higher legal fee where the services were reasonable and necessary.  In addition, the Supreme Court has held that "[i[n measuring the level of success a plaintiff has achieved, the district court may consider the amount of damages awarded compared to the amount of damages requested." Farrar v. Hobby, 506 U.S. 103, 114 (1992).  Here, the recovery was not nominal, but was instated the statutory maximum and DirecTV was awarded 100% of the damages it requested.  Of course, equitable adjustment of fees downward may be appropriate when success is only slight or nominal, as in Washington, 89 F.3d at 1041-43 (holding that a reduction in attorney's fees was appropriate where plaintiff requested $175,000 in damages and was awarded

19

$25,000 by the jury), or in <u>Sheffler v. Experian Info. Solutions, Inc.</u>, 290 F. Supp. 2d 538, 551 (E.D. Pa. 2003)(reducing the fee award by 75% where plaintiff sought $300,000 in damages but was awarded the nominal amount of $1,000), but the burden establishing a basis for an equitable adjustment is on the party seeking the adjustment.  <u>Doering v. Union County Board of Chosen Freeholders</u>, 857 F.2d 191, 195 (3d Cir. 1988).  Here, Defendant has argued unsuccessfully that Plaintiff failed to achieve full success on its claims, and Defendant has submitted no other basis.  Accordingly, no downward adjustment to the lodestar figure is warranted; the Court will award the full lodestar amount.

**D.   <u>Costs</u>**

In addition to requesting over $86,000 in attorneys' fees, DirecTV seeks $1,508.90 in costs.  Both the Communications Act, 47 U.S.C. § 605(e)(30(B)(iii) and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2520(b)(3), authorize the recovery of costs so long as they are not excessive, redundant, and were necessary to reach a final outcome in the matter.  This includes costs associated with filing and serving the Complaint and the out-of-pocket costs associated with depositions.

DirecTV argues that, because D'Andrea insisted on litigating this matter, the total amount of costs should be awarded.  D'Andrea did not specifically object to the costs.  Because these

20

are reasonable, do not appear to be excessive and were necessary to reach a final outcome, they will be awarded.

## III. CONCLUSION

By choosing to vigorously defend this case and to assert counterclaims that were without merit, while unsuccessfully defending violations of the Communications Act and the Electronic Communications Privacy Act that were willful and intentional while presenting a fabricated defense, Joseph D'Andrea upped the ante and required DirecTV to go to considerable length to investigate and prove its claims.  Unfortunately, litigation can be expensive, even when conducted prudently as DirecTV did here. When Congress provided for fee shifting in 18 U.S.C. § 2520(b)(3) and 47 U.S.C. § 605(e)(3)(B)(iii), supra, it undoubtedly intended that the costs and fees of the victimized prevailing party should be shifted to the wrongdoer, here Mr. D'Andrea, so as not to further victimize the wronged party.[3]  This Court will not

---

[3] Numerous courts have recognized this position including the District Court for the Eastern District of New York which held that

> Congress has commonly authorized attorneys' fees in laws under which 'private attorneys general' play a significant role in enforcing our policies. We have, since 1870, authorized fee shifting under more than 50 laws, including, among others, . . . the Communications Act of 1934 . . . . . In cases under these laws, fees are an integral part of the remedy necessary to achieve compliance with our statutory policies.

See Zarcone v. Perry, 438 F. Supp. 788, 792-93 (E.D.N.Y. 1977).

hesitate in doing so, where D'Andrea's underlying conduct was wrongful and his litigation strategy prolonged resolution and introduced fallacious, contrived testimony at trial, as this Court previously found.

Therefore, for the reasons discussed above, the Court will award DirecTV's fee petition in the amount of $87,628.90.  The accompanying Order is entered.


 **July 27, 2007**                          **s/ Jerome B. Simandle**
DATE                                      JEROME B. SIMANDLE
                                          United States District Judge